UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BERNARD OCKERS and MITCHELL LEWIS,

    Plaintiffs,

v.

DASH NETWORKS CORP. (d/b/a FIBERLESS NETWORKS) and LOUIS SLAUGHTER,

    Defendants.

Index No.: 21-cv-02975

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Bernard Ockers ("Ockers") and Mitchell Lewis ("Lewis") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Dash Networks Corp. (d/b/a Fiberless Networks) ("Fiberless") and Louis Slaughter ("Slaughter") (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendants' breach of their employment contracts with Ockers and Lewis, respectively, by failing to appropriately compensate Plaintiffs for their agreed upon salaries, benefits, and bonuses, and for violation of applicable federal and state labor law.

2. More specifically, Fiberless hired Ockers as Vice President of Installations and Business Development in February 2016 with an agreed upon annual base salary of $175,000, plus benefits and bonus. The terms of Ockers' employment with Fiberless, including a detailed compensation structure, were expressly stated and agreed upon in Ockers' February 19, 2016 employment contract (the "Ockers Employment Agreement").

3. Similarly, Fiberless hired Lewis as a Junior Network Engineer in April 2016 with an agreed upon annual base salary of $55,000, plus benefits and bonus. The terms of Lewis' employment with Fiberless, including a detailed compensation structure, were expressly stated and

{N0313514.1}    1

agreed upon in Lewis' April 1, 2016 employment contract (the "Lewis Employment Agreement") (and together with the Ockers' Employment Agreement, the "Contracts").

4. Defendants breached the Contracts by failing to properly compensate Plaintiffs, who would sometimes go several weeks or months without receiving a single paycheck.

5. In fact, at the time of Plaintiffs' resignations from Fiberless effective November 22, 2019 – which were submitted as a result of Defendants' ongoing failure to abide by the compensation terms of the Contracts – Defendants owed Ockers and Lewis in salary, benefits, and bonuses no less than $472,808.00 and $106,738.00, respectively. These sums are exclusive of damages, penalties, and interest due and owing to Plaintiffs under applicable state and federal labor law.

6. Accordingly, Plaintiffs bring this action to recover the unpaid compensation owed by Defendants, which Plaintiffs are unambiguously entitled to under the Contracts, as well as all unpaid wages, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), § 190, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,0000, exclusive of interest and costs, and is between citizens of different states.

8. The Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

9. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

11. Plaintiff Ockers is an individual currently domiciled in Ohio. Ockers was the Vice President of Installations and Business Development of Fiberless from March 1, 2016 until he resigned effective November 22, 2019.

12. During his tenure with Fiberless, Ockers was an exemplary employee responsible for, *inter alia*, planning, coordinating, and executing installations for Fiberless; developing new locations for Fiberless; managing inventory; and assisting with specifying and purchasing wireless equipment for Fiberless points-of-presence throughout the nation.

13. Ockers reported directly to Slaughter, as Chief Executive Officer of Fiberless, and worked out of Fiberless' Brooklyn, New York office 2-3 weeks per month throughout the entirety of his employment with Fiberless.

14. Plaintiff Lewis is an individual currently domiciled in Connecticut. Lewis was a Network Engineer for Fiberless from April 1, 2016 until he resigned effective November 22, 2019.

15. During his tenure with Fiberless, Lewis was an exemplary employee responsible for, *inter alia*, building out Fiberless' internal and customer-facing network; assisting with the installation of equipment; traveling to Fiberless' locations, facilities, and customers; and troubleshooting and repairing outages in Fiberless' external and internal network.

16. At all relevant times, Lewis worked out of Fiberless' office in Brooklyn, New York.

17. Fiberless is a corporation organized and existing under the laws of Massachusetts, with its principal place of business in Quincy, Massachusetts.

18. Fiberless is a private telecommunications company, which, according to its website, offers "enterprises, MDUs and mobile carriers Metro IP transport and connectivity to the Internet – with the speed and reliability of fiber at a fraction of the cost."

19. At all relevant times, Fiberless maintained offices in Massachusetts, as well as in Brooklyn, New York.

20. Defendant Slaughter is an individual currently domiciled in Massachusetts. Slaughter is the Chief Executive Officer of Fiberless, and at all times, controlled Plaintiffs' compensation.

21. Slaughter is the Chief Executive Officer of Fiberless and in a managerial and directorial position at Fiberless with the power to control Fiberless' wage policies, time keeping policies, employee work schedules, and employees' rate of pay. Slaughter also has the ability and authority to hire, fire, and discipline employees. Slaughter is also involved in the negotiation and construction of employee compensation agreements and policies and has control over the day-to-day labor operations at Fiberless.

22. The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified. As such, Defendants have the power to control wage policies and practices through their oversight of day-to-day operating procedures, control over employee work schedules, negotiation of employment contracts, ability to determine employees' rate of pay, and ability to control Fiberless' record and time keeping practices.

23. Thus, Defendants are the joint employers of Plaintiffs within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

24. Fiberless hired Ockers on or about March 1, 2016, and Lewis on or about April 1, 2016.

25. Pursuant to the terms of the Ockers Employment Agreement, Fiberless agreed to pay Ockers $175,000.00 per year as a base salary, to be paid monthly. In addition to this base salary, per the Ockers Employment Agreement, Fiberless agreed to pay Ockers bonuses, provide benefits, and granted Ockers a non-qualified option to acquire 30,000 shares of common stock of Fiberless, representing 3.3% of the then outstanding and fully diluted stock of Fiberless.

26. Pursuant to the terms of the Lewis Employment Agreement, Fiberless agreed to pay Lewis $55,000.00 per year as a base salary, to be paid monthly. In addition to this base salary, per the Lewis Employment Agreement, Fiberless agreed to pay Lewis bonuses, provide benefits, and granted Lewis a non-qualified option to acquire 8,000 shares of common stock of Fiberless.

27. Ignoring the express and unambiguous terms of the Contracts, Fiberless failed to pay Plaintiffs their agreed-upon salaries.

28. Indeed, Plaintiffs would sometimes go several weeks or months without receiving a single paycheck from Defendants.

29. At the time of Plaintiffs' resignations from Fiberless effective November 22, 2019 – which were submitted as a result of Defendants' ongoing failure to abide by the compensation terms of the Contracts – Defendants owed Ockers and Lewis in salary, benefits, and bonuses no less than $472,808.00 and $106,738.00, respectively, plus statutory interest.

30. Defendants expressly acknowledged owing Plaintiffs these sums, but despite repeated demand for payment, have failed to make any payments to Plaintiffs for these back wages.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

31. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as though fully set forth herein.

32. The Ockers Employment Agreement constitutes a valid and binding contract between Ockers and Defendants, pursuant to which Defendants promised to pay Ockers his base salary, as well as benefits and bonuses,

33. At all relevant times, Ockers duly performed his obligations under the Ockers Employment Agreement.

34. Defendants, however, materially breached the Ockers Employment Agreement by failing to properly compensate Ockers.

35. As a result of Defendants' breach of the Ockers Employment Agreement, Ockers has sustained significant damages.

36. At the time of Ockers' resignation from Fiberless effective November 22, 2019 – which was submitted as a result of Defendants' ongoing failure to abide by the compensation terms of the Ockers Employment Agreement – Defendants owed Ockers in salary, benefits, and bonuses no less than $472,808.00, plus statutory interest.

37. Similarly, the Lewis Employment Agreement constitutes a valid and binding contract between Lewis and Defendants, pursuant to which Defendants promised to pay Lewis his base salary, as well as benefits and bonuses.

38. At all relevant times, Lewis duly performed his obligations under the Lewis Employment Agreement.

39. Defendants, however, materially breached the Lewis Employment Agreement by failing to properly compensate Lewis.

40. As a result of Defendants' breach of the Lewis Employment Agreement, Lewis has sustained significant damages.

41. At the time of Lewis' resignation from Fiberless effective November 22, 2019 – which was submitted as a result of Defendants' ongoing failure to abide by the compensation terms of the Lewis Employment Agreement – Defendants owed Lewis in salary, benefits, and bonuses no less than $106,738.00, plus statutory interest.

42. As a direct and proximate result of Defendants' breach of the Contracts, Plaintiffs have been injured in an amount to be determined at trial, but in no event less than $579,546.00, plus statutory interest.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel – In the Alternative)

43. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as though fully set forth herein.

44. Defendants clearly and unambiguously agreed to pay Ockers a base salary of $175,000.00 and Lewis a base salary of $55,000.00.

45. Plaintiffs reasonably and foreseeably relied upon Defendants' promises to pay Plaintiffs their salaries.

46. Ultimately, however, Defendants failed to perform as promised by failing to pay Plaintiffs all compensation due and owing.

47. As a direct and proximate result of Defendants' failure to perform as promised and agreed, Plaintiffs have been injured in an amount to be determined at trial, but in no event less than $579,546.00, plus statutory interest.

## THIRD CAUSE OF ACTION
### (Violation of the FLSA)

48. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as though fully set forth herein.

49. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

50. The FLSA requires each covered employer to pay the minimum wage for all hours worked.

51. Plaintiffs were and are entitled to be paid minimum wage for all hours worked.

52. Defendants, pursuant to their policies and practices, failed and refused to pay minimum wage to Plaintiffs for all of their hours worked.

53. By failing to compensate Plaintiffs for minimum wage for all hours worked, Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq*.

54. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

55. Plaintiffs seek damages in the amount of their unpaid wages, interest, and such other legal and equitable relief as the Court deems just and proper.

56. Plaintiffs also seek recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### (Violation of New York Labor Law – Non-Payment of Straight Wages)

57. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as though fully set forth herein.

58. Pursuant to NYLL §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiffs in violation of NYLL §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

59. Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiffs' wages that concern this lawsuit.

60. Defendants were not authorized by Plaintiffs to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

61. Pursuant to NYLL § 198, employers such as Defendants who intentionally fail to pay wages in conformance with NYLL shall be liable to Plaintiffs for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

62. Defendants have violated the NYLL by failing to pay Plaintiffs for all compensable time and by failing to pay Plaintiffs for the straight time worked at the established rate.

63. Plaintiffs seek the amount of underpayments based on Defendants failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

64. Plaintiffs seek all liquidated and punitive damages and penalties available under the NYLL.

**WHEREFORE**, Plaintiffs demands judgment against Defendants as follows:

(a) On the First Cause of Action, damages in an amount to be determined at trial, but in no event less than $579,546.00, plus statutory interest;

(b) On the Second Cause of Action, damages in an amount to be determined at trial, but in no event less than $579,546.00, plus statutory interest;

(c) On the Third Cause of Action, damages in an amount to be determined at trial;

(d) On the Fourth Cause of Action, damages in an amount to be determined at trial;

(e) Awarding Plaintiffs pre-judgment and post-judgment interest, attorneys' fees, costs, expenses, and disbursements; and

(f) Awarding Plaintiffs such other and further relief that the Court deems just and proper.

Dated: New York, New York
May 26, 2021

McLAUGHLIN & STERN, LLP

By: _____
    Brett R. Gallaway
    Jason S. Giaimo
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
bgallaway@mclaughlinstern.com
jgiaimo@mclaughlinstern.com

*Attorneys for Plaintiffs*